**T.J. CUNNINGHAM, Plaintiff-Appellant,**

v.

**Kenneth M. ADAMS, Kearen T. Marcus, Ken Spillas, Jerry L. Owens, Dorothy Wilken, individually, and in their official capacities as members of Board of County Commissioners of Palm Beach County, Florida, Board of County Commissioners of Palm Beach County, Florida, Defendants-Appellees.**

No. 86–5039.

United States Court of Appeals, Eleventh Circuit.

Jan. 26, 1987.

F. Malcolm Cunningham, Jr., Cunningham & Cunningham, P.A., West Palm Beach, Fla., for Cunningham.

Marlyn J. Altman, Palm Beach County Atty's Office, W. Palm Beach, Fla., for Adams, et al.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

T.J. Cunningham appeals from an order of the district court denying his request for a preliminary injunction against the Board of County Commissioners of Palm Beach County, Florida, and the individual members of the Board in both their official and representative capacities. Cunningham sought to have the Board and its commissioners enjoined from awarding an airport concession to anyone other than himself or, in the event the concession had already been awarded, to have all building and/or operating activity at the concession enjoined. His complaint, filed on December 23, 1985, together with a request for a TRO/preliminary injunction, alleged that the Board had awarded the airport concession to a bidder of lesser qualifications on the basis of Cunningham's sex and race in violation of 42 U.S.C.A. §§ 1981 and 1983.

On December 26, 1985, the trial court denied Cunningham's application on the grounds that he failed to satisfy all four of the prerequisites for a preliminary injunction. Cunningham filed a timely appeal of the district court's order.[1] The issue before this Court is whether the district court abused its discretion in denying Cunningham's request for a preliminary injunction. We conclude that it did not and accordingly affirm the district court.

I.

On or about June 20, 1985, the Board of County Commissioners of Palm Beach County ("The Board") directed that the food and general merchandise concession in the People Express Terminal at Palm Beach International Airport be set aside for award to a Minority Business Enterprise (MBE) or a Woman Business Enterprise (WBE). Pursuant to the Board's directive, the County Department of Airports issued an announcement of solicitation of bids and an instruction sheet for prospective bidders. The instruction sheet provided, *inter alia*, that only certified MBEs and WBEs could bid on the concession. In addition, the instructions described the type of business the county would be looking for, and stated that the award, if made,

[would] be based upon both an objective and subjective comparative evaluation of each Bidder with respect to:

(1) The amount of the Minimum Annual Guarantee bid. (Note: Unusually high figures may be the basis for rejection of a proposal.)

(2) Depth of management, including education and years of experience.

(3) Depth and breadth of experience and history in operating other similar concessions at other airports or similar public facilities, including the ability

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. When the appeal was initially filed, there was some question as to this Court's jurisdiction because it was unclear whether the district court's order constituted a denial of a request for a TRO or a preliminary injunction. In addition, appellee filed a suggestion of mootness based on the fact that the concession at issue had been awarded and had "commenced" operations. By order issued August 4, 1986, a panel of this Court concluded that the Court did have jurisdiction over the appeal and denied the suggestion of mootness.

to provide experience and qualified personnel and advisory services.

(4) Other factors which best serve the highest public interest.

The instructions also explained the procedures that the county would utilize in evaluating the bids and awarding the concession.

Three proposals were submitted in response to the county's solicitation. A ten-member Evaluation Committee, appointed by the Board, heard oral presentations from all three bidders and reviewed the proposals in accordance with the guidelines published in the Instructions to Bidders. The Committee then ranked the three prospective concessionaires using an elaborate point system. Appellant T.J. Cunningham, a black male and a licensed MBE, emerged in first place with 17 points; Wild Blue Deli, a WBE operated by a white female, finished in second place with 18 points; and Haney Enterprises was a distant third with 25 points.

Based on this method of evaluation, the Committee "recommended" T.J. Cunningham to the full Board for award of the concession. The Committee noted, however, that only one point separated T.J. Cunningham from Wild Blue Deli. In light of this closeness, the Committee recommended that the Board hear oral presentations from the top two candidates before awarding the concession.[2]

The Board convened on November 26, 1985, to award the airport concession. Af-

ter listening to brief oral presentations from both candidates, the Board discussed the relative qualifications of the two prospective concessionaires. Excerpts from the meeting's transcript reveal that, after stating that the candidates were virtually even and that a good argument could be made for awarding the concession to either one, one of the Board members said:

... My thought is that there are two things that lay in my mind in favor of one applicant over the other; they are not overwhelming but in terms of trying to make a decision they are things I can look at; one is one of the applications is for something, I guess, what we call, something a little different from what we have in the main terminal[3] and the other is I don't believe in our program we have yet had the opportunity or gone forward with allowing a concession to a WBE, specifically a WBE, we do have a gift shop in Delta who came in through the [MBE][4] program and it is black women who are running it, and that was under the general MBE concept as opposed to WBE so in light of that I think they are extremely close and that is the only way I have been able to distinguish between the two and I would move we give the concession to the Wild Blue Deli.

The Board then voted 2–1 to award the concession to the Wild Blue Deli.[5]

## II.

A preliminary injunction is an extraordinary remedy which should only be granted

---

**2.** The parties dispute the facts on this particular point. Appellant argues that the Committee's "recommendation" of him to the Board constituted a recommendation that the Board in fact award the concession to him. The appellee contends that it was nothing more than an indication from the Committee to the Board that Cunningham had received the most points under its evaluation system. Whatever it means, it was clearly not a binding, final recommendation because it was accompanied by the suggestion that the Board hear presentations from the top two candidates before awarding the concession. If the Committee's recommendation meant what appellant contends, such a suggestion would not have been made.

**3.** Although the record is unclear as to what the Commissioner meant by "something a little dif-

ferent," the parties agree that Cunningham's bid differed from the Wild Blue Deli's in that its financial proposal relied heavily on the sale of liquor. The problem with that, according to the appellees, is that Cunningham had not yet obtained a liquor license, and if he were unable to procure one for some reason his concession might be on shaky financial ground.

**4.** The transcript from the meeting reflects that the commissioner said "WBE" rather than "MBE", but both parties agree that this is an error.

**5.** The Board is actually comprised of five members, but only three were present at the November 25, 1985, meeting.

if the moving party clearly establishes: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) a showing that he will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Johnson v. U.S. Department of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984); *Shatel Corp. v. Mao Ta Lumber & Yacht Co.,* 697 F.2d 1352, 1354–55 (11th Cir.1983). The moving party must prevail on all four prerequisites before a preliminary injunction may issue. *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983). The grant or denial of a preliminary injunction rests within the sound discretion of the district court and is reversible on appeal only for an abuse of that discretion or if contrary to some rule of equity. *Id.; Shatel Corp., supra,* 697 F.2d at 1354. "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County, supra,* 720 F.2d at 1519 (quoting *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir.1974)).

### A. *Likelihood of Success on the Merits*

Cunningham's cause of action, brought pursuant to 42 U.S.C.A. §§ 1981 and 1983, alleges that the Board's award of the concession to Wild Blue Deli violates the Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution. His complaint states two basic claims: [6] (1) that the award violates his substantive constitutional rights not to be discriminated against on the basis of his race in violation of the Thirteenth and Fourteenth Amendments and (2) that the award violates his right to procedural due process pursuant to the Fifth and Fourteenth Amendments.

### 1. *Substantive Constitutional Claim*

Appellant argues that he established a substantial likelihood that he will prevail on the merits of his claim of unconstitutional racial discrimination because the record clearly shows that the concession was awarded to a white female of lesser qualifications rather than to Cunningham as the highest and best bidder. Our review of the record, however, reveals two flaws underlying appellant's argument. First, there is no evidence that the Board's decision was in any way motivated by race. The Board did not select Wild Blue Deli over Cunningham because one proposal was submitted by a white and the other by a black, but because one was submitted by a female and the other by a male.[7] Second, the record indicates that both prospective concessionaires were equivalently qualified. The Board heard oral presentations from both Cunningham and Wild Blue Deli precisely because the difference between the two *was* minimal.[8] As appellee points out, although Cunningham emerged from the Committee with the lowest total points, Wild Blue Deli actually received more first place votes than did Cunningham.

The substantive constitutional issue presented by this case, then, is whether it was unconstitutional discrimination for the Board to award the airport concession to a white female pursuant to the county's WBE program rather than to a black male of similar qualifications under its MBE program. While no court has squarely ad-

---

6. Appellant also has a third claim under state law based on his claim of entitlement to the concession, but he does not press that claim here.

7. The relevant portion of the transcript states: "I don't believe in our program we have yet had the opportunity or gone forward with allowing a concession to a WBE, specifically a WBE ..."

8. The transcript from the meeting clearly indicates that the Board viewed the candidates as very closely qualified. In relevant part, it reflects the following comments:
   "I think that either one would do the appropriate job with People's Express ... I think an argument can be made on each of those [criteria]. Probably for either applicant.
   \* \* \* \* \* \*
   "I think that they are extremely close."

dressed this precise issue, the Supreme Court has upheld the constitutionality of narrowly-tailored MBE programs against challenges from white-majority members.[9] In *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980), the Court held that making race-conscious decisions pursuant to such a program is permissible so long as the program is narrowly tailored and designed to remedy an established history of discrimination. *Id.* at 482–84, 100 S.Ct. at 2776–77; *see also South Florida Chapter of the Associated General Contractors of America v. Metropolitan Dade County Florida*, 723 F.2d 846, 853–55 (11th Cir.1984) (upholding Dade County MBE plan).

■ While this concession was awarded pursuant to a WBE rather than strictly an MBE, there is little conceptual or legal difference between the two programs—in fact, the courts have upheld the constitutionality of MBE programs which included women as eligible minorities. *See, e.g., Local Union No. 35 of the International Brotherhood of Electrical Workers v. City of Hartford*, 625 F.2d 416, 424 (2d Cir. 1980). The awarding of the contract in this instance by the Board to the WBE violated no equal protection rights of appellant Cunningham. *See Ohio Contractors Association v. Keip*, 713 F.2d 167, 175–76 (6th Cir.1983) (affirmative action plan designed to remedy past violations of right to equal protection does not in and of itself cause new violations of right to equal protection).

While it is theoretically possible that West Palm Beach County's WBE program does not comport with *Fullilove* and is therefore unconstitutional, appellant made no attempt to prove that, and the record is devoid of facts necessary to evaluate the program under *Fullilove*. We conclude therefore that the trial court did not abuse its discretion in finding that Cunningham failed to establish a likelihood of prevailing

on the merits on his claim of violation of his substantive constitutional rights.

2. *Procedural Due Process Claim*

Appellant claims that the action of the Board violated his constitutional right to procedural due process pursuant to the Fifth and Fourteenth Amendments. More specifically, he claims the Board's award of the concession to Wild Blue Deli was arbitrary and capricious because (1) appellant was the highest and best bidder, and as the highest and best bidder was entitled by the county's own rules to be awarded the concession, and (2) the Board failed to comply with its own published criteria in awarding the concession and, indeed, interposed two additional criteria without notice.

To establish a violation of constitutional due process, the plaintiff must show: (1) a protected property or liberty interest, and (2) that he was deprived of that interest by government action and without due process of law. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Callaway v. Block*, 763 F.2d 1283, 1290 (11th Cir.1985). Appellant's claim raises issues both as to whether he had a protectable property or liberty interest *and* whether he received due process before those interests, if they exist, were deprived.

■ The Supreme Court defined constitutionally protected property interests in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1977), as follows:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577, 92 S.Ct. at 2709. Although appellant argues that the Evaluation Committee's designation of him as first place bidder under the Board's published criteria

---

**9.** In addition, it is worthwhile to note that the Supreme Court recently reaffirmed the constitutionality of affirmative action programs. *Local 28 of the Sheet Metal Workers' International Association v. EEOC*, — U.S. —, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *Local No. 93, International Association of Firefighters v. City of Cleveland*, — U.S. —, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986).

*entitled* him to receive the concession, his relationship to the prospective concession is more accurately described as a unilateral expectation. *See Jean v. Nelson,* 727 F.2d 957, 981 (11th Cir.1984). At the point in the selection process where the Committee ranked Cunningham first, the county had not promised or given him anything. The county's instructions to bidders stated that the Evaluation Committee would make a "recommendation" to the Board, not a *selection*—the responsibility for making the award rested with the Board by statute and as stated in the instructions to the bidders. *See* 8 Fla.Stat. § 125.35.

Moreover, while the invitation to bid listed specific objective criteria which the Board would consider in making the award, it also stated that the Board would consider "other factors which best serve the highest public interest." And indeed the Board did exercise its discretion to take into consideration other factors it believed to be in the public interest, such as the interest in promoting the WBE program. The general and subjective nature of at least some of the criteria indicates that the Board was vested with considerable discretion in making the award.

Even if appellant could successfully establish a protectable interest, he would still have to prove that the interest was taken from him without due process. *See Dykes v. Hosemann,* 743 F.2d 1488, 1493–94 (11th Cir.1984). Appellant argues that this Circuit's decision in *Hornsby v. Allen,* 326 F.2d 605 (5th Cir.1964), establishes the principle that due process requires agency officials to exercise discretion in granting entitlements in accordance with prescribed standards, and that the Board violated that principle by deviating from its prescribed standards in awarding the concession to Wild Blue Deli. Cunningham alleges that this deviation occurred in two ways: (1) the Board in effect added the criterion that the concessionaire be a woman, and (2) the Board weighed appellant's plan to provide alcoholic beverages at his concession against him even though all applicants were permitted to include such a plan in their proposal.

■ Even assuming *arguendo* that appellant's reading of *Hornsby* is correct, the facts as alleged do not establish that the Board did in fact deviate from its prescribed standards in awarding the concession to Wild Blue Deli. The Board's invitation to bid explicitly reserved the right to consider "other factors which best serve the highest public interest." The Board concluded that it would serve the public interest to award the concession to a WBE, given that an award had never been made to a WBE before, and to award the concession to an enterprise whose bid proposal did not rely heavily on the sale of alcoholic beverages. In addition, there is no evidence that the Board intended from the beginning to award the concession only to a WBE. The small number of bids received even with a joint MBE/WBE solicitation supports a conclusion that it was not arbitrary or irrational for the Board to solicit bids from a broad enough group to give it some selection in awarding the bid. In sum, appellant has not shown a likelihood of success on his procedural due process claim.

### B. *Irreparable Harm*

Assuming that plaintiff could establish likelihood of success on the merits, he would also have to show irreparable harm. *Shatel Corp., supra,* 697 F.2d at 1354. An injury is "irreparable" only if it cannot be undone through monetary remedies. *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir. 1983). As the Supreme Court stated in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974):

> The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

415 U.S. at 90, 94 S.Ct. at 953.

Appellant argues that he made a showing of irreparable harm in three ways: (1)

it is an established principle that irreparable injury will be presumed where there has been a violation of substantive constitutional rights; (2) he does not have an adequate remedy in damages available because calculating lost profits for a new business is too speculative; and (3) money damages cannot compensate him for the lost opportunity to run the concession and gain experience, particularly because the county plans to solicit bids for a whole series of concessions in 1988 when a new airport is completed.

Appellant's first argument has colorable merit, although we are not prepared to say that the district court abused its discretion in rejecting the argument. Although some courts have held that the very violation of certain fundamental constitutional rights can satisfy the irreparable harm requirement in obtaining preliminary injunctive relief, *see Cate v. Oldham,* 707 F.2d 1176, 1188–89 (11th Cir.1983); *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. 1981), the facts of this case do not fit under the rationale of those decisions. While the courts in *Cate* and *Deerfield Medical Center* found that the First Amendment and right to privacy violations in those cases could not be compensated by monetary damages or by prevailing in the litigation, the violation in this case *can* be more readily compensated. Appellant's ultimate injury is the fact that the concession was awarded to someone else. If he is successful in the litigation, the court can direct the Board to award the concession to Cunningham and can award lost profits and other monetary damages to compensate for the period of time Cunningham was wrongfully deprived of the concession. This kind of relief will make Cunningham essentially whole, which was not the case in *Cate* and *Deerfield Medical Center.*

Contrary to appellant's second contention, lost profits in this case can be reasonably accurately calculated by looking at the profits earned during the relevant period by other airport concessions, including the Wild Blue Deli. As for his final argument, appellant has not shown that experience in running an airport concession will be an important or essential requirement to secure a bid for the prospective concessions. Indeed, the fact that the appellant was very seriously considered for the concession at issue in this case without prior experience operating an airport concession seems to indicate that the Board does not regard it as an essential qualification for a concessionaire.

### C. *Public Interest and Balancing the Harms*

Appellant also contends that the district court abused its discretion in finding that the appellant failed to satisfy the final two prerequisites for injunctive relief. We disagree. If the injunction does issue *pendente lite,* the public and the county will be harmed in two ways: first, they will be deprived of the benefit of an operating airport concession for the duration of the litigation and, second, the county, funded by public tax money, may well be liable for breach of contract damages to Wild Blue Deli. While appellant argues that the public's interest in a constitutionally-run government for the duration of the litigation outweighs these considerations,[10] we cannot say that the district court abused its discretion in concluding otherwise. *See Revette v. International Association of Bridge, Structural & Ornamental Iron Workers,* 740 F.2d 892, 893 (11th Cir.1984) (no abuse of discretion where district court could have decided close question either way).

AFFIRMED.

---

**10.** Although appellant also argues that he will suffer lost profits if the injunction does not issue, this argument overlooks the fact that his request for the preliminary injunction requested that the court enjoin the operation of the concession, not that he be allowed to operate the concession. As a result, Cunningham will suffer lost profits even if the injunction does issue.