GUARANTY FINANCIAL SERVICES,
INC., et al., Plaintiffs,

v.

DIRECTOR, OFFICE OF THRIFT
SUPERVISION, et al.,
Defendants.

Civ. A. 90–222–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 10, 1990.

F. Lane Heard, III, Tracy Greer, Williams & Connolly, Washington, D.C., Roy N. Cowart, Cowart & Varner, Warner Robins, Ga., for plaintiffs.

Frank Butler, III, Macon, Ga., Mona B. Alderson, Atty., Dept. of Justice, Washington, D.C., for Dept. of Justice.

Harris Weinstin, Chief Counsel, Randy Thomas, Sr. Counsel, Office of Chief Counsel, Office of Thrift Supervision, Washington, D.C., for defendant T. Timothy Ryan, Director, Office of Thrift Supervision.

Dorothy L. Nichols, Thomas A. Schulz, Cassandra N. Jones, F.D.I.C., Washington, D.C., for defendant F.D.I.C.

## ORDER

OWENS, Chief Judge.

This matter is before the court on plaintiffs' motion for a preliminary injunction. A hearing was held in this matter on July 12, 1990. After careful consideration of the argument of counsel and the record as a whole, the court makes the following findings of fact and conclusions of law.

## FACTUAL BACKGROUND

Houston Federal Savings and Loan Association ("Houston Federal") received a federal charter in February, 1981, and opened for business in September, 1981. At the end of the 1986 fiscal year, Houston Federal reported a negative net worth of $1,040,-916. Because Houston Federal was insolvent as of June 30, 1986, the Federal Savings and Loan Insurance Corporation ("FSLIC") had authority to seize the association and liquidate it. However, FSLIC was not required to do so.

On January 27, 1987, Houston Federal and Guaranty Financial Services, Inc. ("Guaranty Financial") submitted their application for a supervisory conversion of Houston Federal. The application proposed to apply the purchase method of accounting, as defined by Generally Accepted Accounting Principles ("GAAP"), to the acquisition of Houston Federal by Guaranty Federal Savings Bank ("Guaranty Federal") and Guaranty Financial. During the pendency of the application, the Federal Home Loan Bank Board ("FHLBB") requested that the applicants submit *pro forma* financial statements reflecting the proposed application of the purchase method of accounting in the transaction. The applicants complied.

As part of the application, Guaranty Financial submitted a three-year business plan for the new Guaranty Federal. An express assumption of the business plan was that the supervisory goodwill created as a result of the conversion would be treated for reporting purposes as regulatory capital. FHLBB was authorized to approve the application only if Houston Federal was insolvent on a going-concern basis under GAAP, but was capable of being restored to solvency as a result of the conversion. FHLBB approved the application on December 29, 1987.

The merger of Houston Federal into Guaranty Federal and the acquisition of Guaranty Federal by Guaranty Financial, subject to purchase method accounting in accordance with GAAP, prevented the probable failure of Houston Federal. As a result of the supervisory conversion, Guaranty Federal had a negative tangible net worth. In approving the application, FHLBB anticipated that Guaranty Federal would have a negative tangible net worth as a result of the supervisory conversion. Only by treating "supervisory goodwill" as capital for regulatory purposes could Guaranty Federal be deemed a solvent institution. Under GAAP, an insolvent thrift's acquiror was permitted to record "supervisory goodwill" as an asset on the thrift's books, in the amount that the market value of the acquired institution's liabilities exceed the fair value of its assets. By so treating "supervisory goodwill," Guaranty Federal had a total net worth in excess of $1 million immediately after the conversion. The FHLBB granted Guaranty Federal a forbearance which would allow for the amortization of "supervisory goodwill" over a period of 25 years on a straightline basis. Since January, 1988, Guaranty Federal has removed over $322,000 in goodwill from its books and earned an additional $325,000. As of December, 1989, Guaranty Federal had approximately $2.7 million in unamortized supervisory goodwill on its books.

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") permits only limited "qualifying" amounts of goodwill to be included for purposes of computing the acquiror's capital. The Office of Thrift Supervision ("OTS") disregards this goodwill in calculating Guaranty Federal's tangible capital. Consequently, in calculating minimum regulatory capital under the three current capital standards, an acquiror may not include any goodwill as capital in calculating "tangible capital," and may only include qualifying goodwill in its core and risked based capital computations. Guaranty

Federal submitted a capital plan on January 6, 1990, and a revised plan on February 28, 1990.[1] Thereafter, OTS issued certain blanket waivers of operating restrictions otherwise agreed to by Guaranty Federal as part of its exemption application. At present Guaranty Federal's capital plan and request for exemptions are still pending before the OTS. The OTS has not yet determined to appoint a conservator or receiver for Guaranty Federal.

Under FIRREA capital requirements, at the end of March 1990, Guaranty Federal was required to have $419,000 in tangible capital, $838,000 in core capital and $1,409,000 in risk-based capital. At that time, Guaranty Federal had minus $1,426,000 in tangible capital, minus $1,007,000 in core capital, and minus $1,007,000 in risk-based capital. On March 16, 1990, OTS advised Guaranty Federal that it was deemed insolvent and, subject to certain waivers, might not "increase its liabilities or ... make any new loans or investments without the prior written approval of the District Director."

On June 1, 1990, OTS advised Guaranty Federal that it had prepared and was ready to send a "consent to merge" letter. The letter would call upon the board of directors to authorize OTS to merge or sell the bank, at OTS' discretion and upon whatever terms it deems appropriate. Plaintiffs subsequently filed the instant action seeking a TRO and a Preliminary Injunction.

## DISCUSSION

■■■ In order for plaintiffs to prevail on their motion for a preliminary injunction, plaintiffs must establish:

(1) a substantial likelihood that [plaintiff] will ultimately prevail on the merits;

(2) a showing that [plaintiff] will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to [plaintiff] outweighs whatever damage the proposed injunction may cause the opposing party;

(4) a showing that the injunction, if issued would not be adverse to the public interest.

**1.** The plan submitted on February 28, 1990, has

*Cunningham v. Adams,* 808 F.2d 815, 819 (11th Cir.1987). As an initial matter defendants argue that this court lacks jurisdiction to enjoin OTS or FDIC action and that plaintiffs' claims are not ripe because neither the FDIC nor the OTS has taken any action which affects plaintiffs in a concrete way. Thus, defendants argue, plaintiffs have suffered no irreparable injury and have no likelihood of success on their contract or estoppel claims. The court disagrees.

12 U.S.C.A. § 1464(d)(1) provides in relevant part:

> Except as otherwise provided herein, the Board shall be subject to suit (other than suits on claims for money damages) by any Federal savings and loan association or director or officer thereof with respect to any matter under this section or any other applicable law, or rules or regulations thereunder, in the United States district court for the judicial district in which the home office of the association is located, or in the United States District Court for the District of Columbia....

Although actions in contract, express or implied, against the United States are governed by the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, where there is a specific grant of jurisdiction to the district court, the district court will have jurisdiction over the claim. *Munoz v. Small Business Administration,* 644 F.2d 1361, 1365 n. 3 (9th Cir.1981). Guaranty's action falls within the grant of jurisdiction of § 1464(d)(1). *See, Flagship Federal Savings Bank v. M. Danny Wall, Director, et al.,* Civ. No. 90–0079 (S.D.Cal., Feb. 14, 1990).

■■■ The court also disagrees with the defendants' contention that this matter is not ripe. In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court stated "cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." *Id.* at 149, 87 S.Ct. at 1516. In the case *sub judice,* the OTS made the following determination in Thrift Bulletin 38–2:

been withdrawn by Guaranty Federal.

The Office of Thrift Supervision is applying the new capital standards to all savings associations, including those associations that have been operating under previously granted capital and accounting forbearance. Section 5(t) of HOLA as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 eliminates these forbearance. All savings associations presently operating with these forbearance, therefore, should eliminate them in determining whether or not they comply with the new minimum regulatory capital standards.

If the association determines that it will fail to meet its minimum regulatory capital requirements upon the elimination of capital and accounting forbearances, it must submit a capital plan to its District Director in accordance with the regulatory capital regulation and Thrift Bulletin 36.

A capital plan will not be acceptable if it includes the continuation of previously granted capital and accounting forbearance.

"Once the agency publicly articulates an unequivocal position ... and expects regulated entities to alter their primary conduct to conform to that position, the agency has voluntarily relinquished the benefit of postponed judicial review." *Ciba–Geigy Corp. v. United States Entvl. Protection Agency*, 801 F.2d 430, 436 (D.C.Cir.1986). In the court's best judgment, the language in Thrift Bulletin 38–2 clearly states the position of OTS that capital and accounting forbearances granted by FSLIC and the FHLBB will no longer be honored. The practical result of that decision is to put Guaranty Federal in the position of not being able to meet the capital requirements of FIRREA and thus be declared an insolvent institution. Consequently, OTS has placed restrictions upon Guaranty Federal's ability to conduct business, which has resulted in the loss of key employees and customers. Thus, the decision of OTS to prohibit the inclusion of "supervisory goodwill" when determining whether institutions meet the capital requirements of FIRREA, has resulted in an injury cognizable by this court. The defendants' contention that neither the FDIC nor the OTS has taken any action which affects plaintiffs in a concrete way is without merit. The court will now address whether plaintiffs can meet the criteria for the issuance of a preliminary injunction.

■ The court finds that plaintiffs have a substantial likelihood of success on the merits of this action. Assuming the conversion agreement is a contract, it clearly creates rights, duties and obligations, and therefore falls under § 401(g) of FIRREA. The court further finds that the forbearance agreement was an integral part of the conversion agreement. Plaintiffs would not have invested one million dollars into this institution absent the forbearance agreement. Moreover, but for the forbearance agreement, Guaranty Federal would have been insolvent and subject to closure at its inception. Congress could not have intended a result so inequitable as the complete abrogation of a long term agreement upon which plaintiffs, in this case and others relied in investing large sums of capital.

The court further finds that plaintiffs have demonstrated that they will suffer irreparable injury unless an injunction is issued. As stated *supra*, the OTS' determination not to honor the forbearance granted to Guaranty Federal by FHLBB, OTS' predecessor in interest, has resulted in Guaranty Federal being declared insolvent. Restrictions have been placed on the types of loans Guaranty Federal can make, resulting in the loss of key employees who have nothing to do; the loss of customers whose needs cannot be serviced; and a loss of business reputation. The defendants' argument that any injury plaintiffs would experience is purely economic in nature ignores reality.

As to the requirement that the threatened injury outweigh whatever harm the proposed injunction may cause the opposing party, the court finds that plaintiffs have met their burden. Any injunction issued by this court would not interfere with the OTS's right to oversee Guaranty Federal's affairs or its duty to comply with its obligations under the conversion agree-

ment or the capital requirements established by OTS.

Finally, the court finds that the issuance of an injunction would not be adverse to the public interest. Although the court agrees the protection of the depositors funds is in the public interest, in the best judgment of the court it is also in the public interest to protect the investors who have channeled millions of dollars into failing institutions having relied upon forbearances granted by the predecessors in interest to OTS and FDIC.

Accordingly, it is hereby ORDERED that the defendants in this action are PRELIMINARILY ENJOINED from requiring that plaintiffs execute a consent to merge agreement and from excluding the amortization of supervisory goodwill from any and all determinations of the plaintiff institution's capitalization as set out in the forbearance agreement. This order does not relieve Guaranty Federal of its continuing obligations to maintain records of its reserve and regulatory capital condition and to report its financial condition in accordance with applicable regulatory requirements nor does it prohibit the defendants from acting with respect to any regulatory or other requirement other than those as set out above.

SO ORDERED.