**Bonnie J. REGER, Plaintiff,**

v.

**Mike ESPY, Secretary of Agriculture and Blue Cross and Blue Shield of Georgia, Inc., Defendants.**

**Civ. A. No. 1:93–cv–2213–RLV.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 27, 1993.

John McNaughton Sikes, Jr., Mary Ann B. Oakley, Atlanta, GA, for plaintiff.

Michael R. Hurst and William H. Major, Atlanta, GA, Thomas E. Johnson, Omaha, NE, for Blue Cross & Blue Shield of Georgia.

Amy B. Kaminshine, Atlanta, GA, for OPM and Agriculture.

## ORDER

VINING, District Judge.

This matter is before the court on the plaintiff's motion for temporary, preliminary, and permanent injunctions. Oral arguments on the motion were held on October 11 and October 13, 1993.

The plaintiff is an employee of the Department of Agriculture ("Agriculture") and is enrolled in the Blue Cross and Blue Shield Government–Wide Service Benefit Plan ("the Plan"), which is administered by Blue Cross and Blue Shield of Georgia, Inc. ("Blue Cross"). The Plan is offered by Blue Cross pursuant to a contract with the United States Office of Personnel Management ("OPM"),[1] as authorized by the Federal Employees Health Benefits Act ("FEHBA"). 5 U.S.C. § 8902(a).

The plaintiff has advanced breast cancer—Stage IV—and seeks insurance coverage for high-dose chemotherapy with autologous bone marrow transplant, commonly referred to as "HDC–ABMT". Blue Cross denied the plaintiff's request for preauthorization of benefits, and OPM upheld that decision on appeal pursuant to its authority to make final administrative decisions on disputed claims. 5 U.S.C. § 8902(j).

The plaintiff subsequently filed suit in this court and moved for injunctive relief. Count I of the plaintiff's complaint is against defendants Blue Cross and OPM, and Count II is against the Department of Agriculture. In Count I, the plaintiff alleges that the exclusion of coverage for HDC–ABMT for breast cancer violates 5 U.S.C. § 8902(f) of FEHBA and is an arbitrary and capricious decision. In Count II, the plaintiff alleges that the denial of coverage by the Department of Agriculture violates Title VII of the Civil Rights Act of 1964, in that the exclusion of HDC–ABMT treatment for breast cancer has a disparate impact upon females.

A preliminary injunction will be granted only if the moving party establishes: (1) a substantial likelihood that she will prevail on the merits; (2) a showing that she will suffer

---

1. On October 5, 1993, the plaintiff amended her complaint to add the Office of Personnel Management as a defendant.

irreparable injury unless the injunction issues; (3) proof that the threatened injury to her outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Cunningham v. Adams*, 808 F.2d 815, 818 (11th Cir.1987). The party seeking an injunction must prevail on all four prerequisites before a preliminary injunction may issue. *Id.*

Under FEHBA, health coverage is provided to federal employees through procurement contracts negotiated each year between OPM and a number of private carriers, and not through individual contracts between each federal employee and a private carrier. OPM is charged with the approval of health benefit plans under section 8902(d), which provides, "Each contract under this chapter shall contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as the Office considers necessary or reasonable." 5 U.S.C. § 8902(d). Judicial review of an agency action, including the exclusion of benefits, is governed by the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). The court may set aside OPM's actions only if they are arbitrary, capricious, or an abuse of discretion. *Tackitt v. Prudential Insurance Co. of America*, 758 F.2d 1572, 1575 (11th Cir.1985). A finding that the agency's action is arbitrary and capricious would require the court to find that there is no rational basis for the decision. *Id.* (citing *Bowman Transportation Inc. v. Arkansas–Best Freight Systems*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974)). If the court determines that a rational connection exists between the evidence and the decision, then the court will defer to the expertise of the agency. *Id.*

There is no question that the Plan specifically excludes from coverage HDC–ABMT for breast cancer. The Plan provides, in relevant part:

> **What is Covered** The following human organ/tissue transplant procedures: ...

> ● Autologous bone marrow (autologous stem cell support) and autologous peripheral stem cell support, for 1) Acute lymphocytic or non-lymphocytic leukemia, 2) Advanced Hodgkin's lymphoma, 3) Advanced Non–Hodgkin's lymphoma, 4) Advanced neuroblastoma, and 5) Testicular, Mediastinal, Retroperitoneal and Ovarian germ cell tumors ...

> **What is Not Covered**

> ● Services or supplies for or related to surgical transplant procedures for artificial or human organ/tissue transplants not listed as specifically covered such as breast cancer (see page 44 for non-FEHB benefits). Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures.

Declaration of Lucretia Myers ("OPM Declaration"), at ¶ 9, page 22 of the Service Benefit Brochure. In the section on inpatient care, the brochure further provides:

> **Limited benefits Other services**

> Chemotherapy when supported by bone marrow transplant or autologous stem cell support is only covered for specific diagnoses (see Organ/tissue transplants under Surgical–Medical benefits).

Page 20 of the Service Benefit Brochure.

The defendants maintain that OPM's decision to exclude HDC–ABMT for breast cancer is not arbitrary and capricious because the available data is inconclusive as to whether that treatment is superior to standard chemotherapy.[2] Prior to 1991 HDC–ABMT was not covered in the Plan because it was deemed to be an experimental or investigational treatment. Beginning in 1991 the Plan specifically excluded HDC–ABMT for most diagnoses, including breast cancer.

In late 1990 the Blue Cross Association in collaboration with the National Cancer Institute ("NCI"), developed and announced a project (the "Demonstration Project") to support and complete four large, multi-center, randomized phase III trials testing HDC–

---

2. The defendants do not claim that HDC–ABMT for breast cancer is excluded as experimental or

investigational or for economic reasons.

ABMT in comparison to standard therapy in breast cancer.[3] At this time OPM permits the Plan to make monetary contributions to the Demonstration Project. Gleeson Affidavit at ¶ 11. Phase III trials are designed to compare the medical results of the experimental therapy to a standard, accepted therapy. The participants in a phase III trial are randomly selected to receive either the standard or experimental therapy. Gleeson Affidavit at ¶ 5; Declaration of Bruce D. Cheson, M.D., Head of the Medicine Section of the Division of Cancer Treatment of the Cancer Therapy Evaluation Program, Clinical Investigations Branch of the NCI ("Cheson Declaration") at ¶ 8. Because physicians may not ethically allow a patient to receive a known inferior therapy, phase III clinical trials can be performed ethically only if it is unknown whether the experimental or standard treatment is superior. Gleeson Affidavit at ¶ 14. To date no conclusions have been formed as to whether HDC–ABMT is better than, worse than, or equal to conventional therapy in terms of disease-free or overall survival. *Id.*

Both the plaintiff and the defendants have presented the court with a number of articles that discuss the use of HDC–ABMT in treating breast cancer. Additionally, the parties have submitted the testimony of various experts in support of their respective positions. After a review of all the material, it is clear to the court that there is a lack of consensus within the medical profession regarding the appropriateness of using HDC–ABMT in the treatment of breast cancer at this time. The court finds, however, that based on the evidence before OPM, the agency's decision to exclude that treatment from coverage is rational; therefore, the court will defer to the agency's expertise. The court finds that OPM's action was not arbitrary or capricious.

■ The plaintiff contends that the exclusion of benefits for HDC–ABMT for breast cancer violates FEHBA's provision that a health benefits contract may not exclude an individual based on gender. 5 U.S.C. § 8902(f). Section 8902(f) provides:

> A contract may not be made or a plan approved which excludes an individual because of race, sex, health status, or, at the time of the first opportunity to enroll, because of age.

OPM interprets that provision as relating only to an individual's participation in a benefits plan. OPM refers to the regulations setting minimum standards for health benefits plans in support of its position, which provide in relevant part:

> § 890.201 **Minimum standards for health benefits plans.**
>
> (a) To qualify for approval by OPM, a health benefits plan shall meet the following standards.... A health benefits plan shall:
>
> > (2) Accept the enrollment, in accordance with this part, and without regard to age, race, sex, health status, or hazardous nature of employment ...

5 C.F.R. § 890.201(a)(2). The court agrees with OPM's reading of the statute and finds that section 8902(f) applies only to an individual's ability to participate in a health benefits plan under FEHBA and not to the inclusion or exclusion of benefits.

■ The plaintiff next alleges that excluding from coverage HDC–ABMT treatment for breast cancer violates Title VII because the exclusion has a disparate impact on women. It is clear from the language of the Plan, however, that HDC–ABMT benefits are not available for most types of cancers,[4] only one of which is breast cancer. The court finds, therefore, that the decision not to provide HDC–ABMT benefits for all but the five listed diagnoses affects both men and women

---

**3.** Phase I clinical trials are the earliest stage of testing a drug, device, or procedure in human beings. During phase II trials the gathering of scientific information regarding the medical effectiveness or ineffectiveness of the procedure becomes a principal objective of the trial. Affidavit of Susan Gleeson, Executive Director of the Technology Evaluation and Specialty Network Division of the Blue Cross and Blue Shield Association ("Gleeson Affidavit") at ¶ 5; *see* C.F.R. § 312.21(a), (b).

**4.** According to Dr. Cheson, there are more than 100 forms of malignant disease generally classified as "cancer." Cheson Declaration at ¶ 4. The plan does not cover HDC–ABMT treatment for the majority of those diagnoses.

equally. The court finds that the plaintiff has failed to establish that the facially neutral exclusion has a disparate impact on women.

The court finds that there is not a substantial likelihood that the plaintiff will prevail on the merits of either count I or count II; therefore, the plaintiff is not entitled to temporary or preliminary injunctive relief. Moreover, the plaintiff's motion for a permanent injunction at this stage of the proceedings is premature. For the foregoing reasons, the plaintiff's motion is DENIED.

SO ORDERED.