954 F.2d 1526
 60 USLW 2534
 David DUKE, Martha Andrews, William Gorton and Victor
Manget, Plaintiffs-Appellants,
v.
Max CLELAND, Secretary of State of the State of Georgia and
Chair of the Presidential Candidate Selection
Committee; and Presidential Candidate
Selection Committee,
Defendants-Appellees,
Alec L. Poitevint, Member of the Presidential Candidate
Selection Committee, Defendant-Intervenor-Appellee.
 No. 92-8048.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 11, 1992.
 
 Griffin, Dickson & O'Toole, Marietta, Ga., Neil T. Bradley, Moffatt Laughlin McDonald, Mary Ellen Wyckoff, American Civ. Liberties Union, Southern Regional Office, Gerald R. Weber, American Civ. Liberties Union, Atlanta, Ga., for plaintiffs-appellants.
 Dennis R. Dunn, Sr. Asst. Atty. Gen., Atlanta, Ga., for Cleland and Presidential Candidate Selection Committee.
 Oscar N. Persons, Howard D. Hinson, David J. Stewart, Lonnie Theodore Brown, Scott C. Commander, R. Clay Milling, Alsont & Bird, Frank Strickland, Atlanta, Ga., for Poitevint.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH, ANDERSON and COX, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 FACTS
 
 1
 On December 4, 1991, appellant Duke announced his candidacy for the Republican nomination for President of the United States. Under Georgia law, a presidential preference primary shall be held in 1992 "so that the electors may express their preference for one person to be the candidate for nomination by his party or body for the office of President of the United States." O.C.G.A. § 21-2-191. Political parties participating in Georgia's primary may establish their own rules regarding the selection of delegates to nominating conventions. O.C.G.A. § 21-2-195. The rules of Georgia's Republican Party bind its delegates to vote at the Republican national convention for the candidate who receives the most votes in Georgia's preference primary.[1]
 
 
 2
 Georgia law establishes a presidential candidate selection committee ("Committee") to perform the duty of selecting the candidates that will appear on the presidential preference primary ballot. O.C.G.A. § 21-2-193(a).[2] Georgia's Secretary of State prepares an initial list of presidential candidates and submits this list to the Committee. O.C.G.A. § 21-2-193(a). This list includes names of presidential candidates "who are generally advocated or recognized in news media throughout the United States as aspirants for that office and who are members of a political party or body which will conduct a presidential preference primary" in the state. Id.
 
 
 3
 Pursuant to this statutory duty, during the first week in December 1991, Max Cleland, Georgia's Secretary of State, published a list of names of potential presidential candidates for the 1992 Georgia presidential preference primary. This list included appellant's name as one of the potential candidates for the Republican nomination for President. During the second week of December 1991, Cleland submitted this list to the Committee.
 
 
 4
 On December 16, 1991, the Committee met to consider the list of candidates. Under Georgia law, "[e]ach person designated by the Secretary of State as a presidential candidate shall appear upon the ballot of the appropriate political party or body unless all committee members of the same political party or body as the candidate agree to delete such candidate's name from the ballot." Id. In this case, all the Republican Committee members--state Republican party chair Alec Poitevint, Senate Minority Leader Tom Phillips and House Minority Leader Paul Heard--agreed to remove Duke's name from the ballot. The Secretary of State subsequently published the list of presidential candidates exactly as slated by the Committee, thereby omitting Duke's name from the ballot. See id.
 
 
 5
 Before the January 6, 1992, statutory deadline, Duke then made a request in writing to the Secretary of State that his name be placed on the ballot. See O.C.G.A. § 21-2-193(b). On January 8, 1992, the Committee reconvened to consider Duke's request. Under Georgia law, had any Republican member of the Committee requested that Duke's name be placed on the presidential preference primary ballot, the Committee would have been bound to instruct the Secretary of State to include his name on the ballot. Id. However, none of the Republican members of the Committee asked to include Duke's name on the ballot, and, accordingly, Duke's name has not been placed on the primary ballot.
 
 PROCEDURAL HISTORY
 
 6
 On January 15, 1992, appellant Duke, together with appellants Martha Andrews, William Gorton, and Victor Manget,[3] commenced this action in the United States District Court for the Northern District of Georgia against Secretary of State Cleland and the Committee, challenging the constitutionality of Duke's exclusion from the presidential preference primary ballot. Appellants alleged that the Committee's actions denied appellants' First Amendment rights of free speech and association and sought a temporary restraining order, preliminary injunction and permanent injunction in order to prohibit the printing of ballots for Georgia's presidential preference primary unless appellant Duke was listed as a Republican candidate.
 
 
 7
 The district court held a hearing on January 18, 1992, at which time the court granted appellee Poitevint's motion to intervene. In a written order issued January 21, 1992, the district court denied appellants' motion for preliminary injunctive relief. 783 F.Supp. 600. The district court held that a grant of preliminary injunctive relief was inappropriate because appellants failed to prove (1) that a First Amendment right exists which guarantees access to the primary ballot of a party which does not, itself, extend that right, (2) that appellees' actions have deprived appellants of their First Amendment rights of association, (3) that the Committee's exclusion of Duke from the primary ballot constituted state action, (4) that the threatened injury to the appellants outweighed the damage the proposed injunction might cause to appellees, or (5) that the injunction would not be adverse to the public interest.
 
 
 8
 On January 21, 1992, appellants filed a notice of appeal and motion for injunction pending appeal. The district court denied the motion on January 22, 1992, at which time appellants filed an emergency motion for an injunction pending appeal with this court. In an order dated January 23, 1992, this court denied appellants' emergency motion, finding that "Duke has not demonstrated a substantial likelihood that he can succeed on the merits of his claim that his constitutional rights were violated by his being prevented from appearing on the ballot as a Republican."
 
 
 9
 Appellants filed a motion for an expedited appeal on January 24, 1992, and this court granted the motion on the same day. On January 27, 1992, this court amended the original briefing order and set this case for oral argument on February 6, 1992.
 
 DISCUSSION
 A. Mootness
 
 10
 We begin by addressing appellees' contention that this controversy is moot because the ballots have already gone to the printer without David Duke's name on them. Appellees argue that because it is too late for Duke to be on the 1992 primary ballot, this case does not fall within the exception to the mootness doctrine in that it is " 'capable of repetition, yet evading review.' " Moore v. Ogilivie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969) (citing Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). We conclude that appellees have not demonstrated that it is, in fact, "too late" for Duke's name to appear on the ballot or for appellants to obtain some other appropriate relief. Moreover, we hold that the case is not moot because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose in [1992]." Norman v. Reed, --- U.S. ----, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992).
 
 B. Standard of Review
 
 11
 At the trial level, appellants sought a preliminary injunction in order to suspend the printing of the Georgia Presidential Primary ballots without David Duke's name on them. In order to prevail, a party seeking a preliminary injunction must establish: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) a showing that he will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to him outweighs the harm the injunction may cause the opposing party; and (4) a showing that granting the injunction would not be adverse to the public interest. Cunningham v. Adams, 808 F.2d 815, 819 (11th Cir.1987); Johnson v. U.S. Department of Agriculture, 734 F.2d 774, 781 (11th Cir.1984); Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352, 1354-55 (11th Cir.1983). The district court denied the appellants' request for an injunction, and the ballots, therefore, were sent to the printer without the addition of David Duke's name.
 
 
 12
 This court has jurisdiction over this case under 28 U.S.C. § 1292(a)(1), the provision governing review of district court rulings on preliminary injunctions. Because this court is reviewing the district court's denial of a preliminary injunction, the appropriate standard of review is whether the district court abused its discretion. Cunningham v. Adams, 808 F.2d at 819; United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir.1983). Acknowledging the narrow standard of review, we proceed to examine whether the district court abused its discretion in finding that appellants would not be likely to prevail on the merits. Because we conclude that appellants are unlikely to prevail on the merits, we do not address the other three prerequisites to the granting of an injunction.[4]
 
 C. Likelihood of Success on the Merits
 
 13
 In order to assess appellants' likelihood of success on the merits, we need to determine the appropriate constitutional standard to apply, strict scrutiny or some lesser standard. In general, in order to evaluate the constitutionality of a state election law, it is necessary to identify whether the challenged law burdens rights protected by the First and Fourteenth Amendment. If the challenged law burdens a fundamental constitutional right, then the law can survive only if the State demonstrates that the law advances a compelling interest and is narrowly tailored to meet that interest. See Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986); Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979).
 
 
 14
 In ballot access cases, however, the Supreme Court has often deviated from the strict scrutiny model of analysis. Beginning with Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the Court applied a strict scrutiny analysis to strike down an Ohio law which required new political parties to obtain a larger percentage of the vote than parties that had participated in the last gubernatorial election. In two later cases, Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) and American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), however, the Court recited the strict scrutiny language and then arguably receded from the standard in its application. See also Laurence H. Tribe, American Constitutional Law 783 (1978); Gerald Gunther, Constitutional Law 849-54 (12th ed. 1991).
 
 
 15
 In Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the Court adopted a different methodology. The Court espoused a individualized weighing of the various protected rights alleged to be burdened and the justifications the State put forward in support of the law. The Court emphasized that this weighing will not produce an "automatic" result and that "hard judgments" often must be made. Id. at 1570 (citation omitted).
 
 
 16
 Finally, in Norman v. Reed, supra, the Court's latest pronouncement in the ballot access area, the Court returned to the traditional strict scrutiny analysis in striking down two provisions of an Illinois law that made it difficult for a new political party to obtain a position on the ballot. For both provisions, the Court concluded that the law was not narrowly tailored to meet the interests of the State.
 
 
 17
 In the present case, we need not definitively decide upon the proper standard. While we are hesitant in concluding that the burdens imposed on appellants infringe rights protected by the Constitution, we are more confident in concluding that the interests appellees advance are legitimate and compelling interests, justifying the resulting burden. Therefore, even under a strict scrutiny analysis, it appears that appellants are unlikely to prevail on the merits.
 
 
 18
 Despite the uncertainty in the specific standard to be employed, we need to articulate precisely the claims appellants make, examining the constitutional rights allegedly burdened by the Committee's decision to exclude Duke from the presidential primary ballot. Appellants argue that the Committee's action violates their First and Fourteenth Amendment rights. First, Duke claims that his deletion from the presidential primary ballot infringes his right to associate with the political party of his choosing. Second, the other appellants, individual voters, claim there has been an infringement on their right to vote.[5]
 
 
 19
 1. Duke's Claim of Infringement of His Right of Association
 
 
 20
 Duke first claims that the Committee's decision excluding him from the ballot infringed his right of association. In effect, Duke argues that he has a right to associate with an "unwilling partner," the Republican Party. See Belluso v. Poythress, 485 F.Supp. 904, 912 (N.D.Ga.1980).
 
 
 21
 As the discussion below demonstrates, the Republican Party enjoys a constitutionally protected freedom which includes the right to identify the people who constitute this association that was formed for the purpose of advancing shared beliefs and to limit the association to those people only. See Democratic Party of U.S. v. Wisconsin, 50 U.S. 107, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981). The necessary corollary to this is that Duke has no right to associate with the Republican Party if the Republican Party has identified Duke as ideologically outside the party. In cases where a voter has urged a right to vote in a party primary, the Supreme Court has stated that a "nonmember's desire to vote in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications." Tashjian, 107 S.Ct. at 549 n. 6. The same rationale is also applicable in the instant case. Despite Duke's desire to be slated on the ballot as a Republican, we find that appellees did not infringe his right of association because the Republican Party legitimately exercised its right "to identify the people who constitute the association, and to limit the association to those people only." Wisconsin, 101 S.Ct. at 1019.
 
 
 22
 2. The Appellants' Claim of Infringement of Their Right to Vote
 
 
 23
 Appellants also argue that the decision of the Committee has burdened their right to vote. While the Supreme Court has acknowledged that the right to vote is a fundamental right, see Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), the absolute right to vote is not implicated in this case. The specific right alleged to be infringed in this case is not the right to vote in general but the right to vote for a particular candidate as a Republican in the presidential primary. It is important to note that appellees' actions have not deprived appellants of their right to vote for Duke as either an independent candidate or the candidate of a third party in the general election. Nor is there any claim in this case that appellants have been deprived of their right to vote for Duke as a third-party candidate in the primary or as a write-in candidate in the primary or general election. Because appellees' actions have not foreclosed totally appellants' opportunity to vote for Duke in the 1992 presidential election, we believe that the burden on the right to vote is substantially less in this case than in Anderson v. Celebrezze, supra, where the state statute prevented an independent candidate from appearing on the presidential general election ballot after a certain filing deadline thereby precluding independent-minded voters from exercising their right to vote for a candidate sharing their particular viewpoint. Although the alleged infringement on the right to vote in this case is thus considerably attenuated,[6] we will assume arguendo that there has been some burden on the right to vote, and thus we proceed to evaluate the countervailing state interests.
 
 3. State Interests
 
 24
 Appellees assert that Georgia has an interest in maintaining the autonomy of political parties. The Supreme Court has long recognized that the First Amendment guarantees a political party's right of association and that this right "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." Wisconsin, 450 U.S. at 122, 101 S.Ct. at 1019. In Eu, 109 S.Ct. at 1021, in holding that a California statute that prohibited a political party from endorsing a primary candidate violated the party's constitutionally protected freedom of association, the Court stated that the party's freedom of association extends to the right to identify the people who constitute the association, and the right to select a standard bearer who best represents the party's ideologies and preferences. For the latter proposition, the Court cited Ripon Soc'y, Inc. v. National Republican Party, 525 F.2d 567, 601 (D.C.Cir.1975) (Tamm, J., concurring in result), cert. denied, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). See also Tashjian, 479 U.S. at 235-36, 107 S.Ct. at 560 (Scalia, J., dissenting) ("The ability of the members of [a political party] to select their own candidate ... unquestionably implicates an associational freedom...."). 450 U.S. at 122, 101 S.Ct. at 1019.
 
 
 25
 In Wisconsin, supra, the state law of Wisconsin provided for an open primary and also provided that the delegates to the national convention chosen by each political party would be bound by the results of the primary. The National Democratic Party ruled that the Wisconsin delegation would not be seated because the plan for the selection of its delegates violated the National Party rule that delegates to the national convention be chosen through procedures in which only Democrats can participate. In the ensuing litigation in state court, the Wisconsin Supreme Court held that the Democratic Party could not disqualify the Wisconsin delegation from being seated and that the delegates were bound to follow the results of Wisconsin's open primary. The Supreme Court reversed, holding that the Democratic Party could disqualify and refuse to seat the Wisconsin delegation because it was bound to vote in accordance with the results of the open primary in violation of the party rules. In so holding, the Court recognized that the party's rule played a legitimate role in safeguarding the party's constitutionally protected right of political association. Id. at 121-22, 101 S.Ct. at 1019. The Court indicated that the legitimacy of the Democratic Party rule was supported by precedent which "recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions--thus impairing the party's essential functions--and that political parties may accordingly protect themselves from 'intrusions by those with adverse political principles' " Id. at 122, 101 S.Ct. at 1019 (quoting Ray v. Blair, 343 U.S. 214, 221-22, 72 S.Ct. 654, 657-58, 96 L.Ed. 894 (1952)); see also Rosario v. Rockefeller, 410 U.S. 752, 760, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973) (sustaining state statute designed "to inhibit party 'raiding,' whereby voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary").
 
 
 26
 In Ray v. Blair, supra, the Alabama Democratic Party refused to certify Blair as a candidate for Presidential Elector to the Electoral College in the Democratic Primary, because Blair refused to sign the loyalty pledge required of party candidates, pledging to aid and support the nominees of the national convention of the Democratic Party. The Supreme Court of Alabama granted a writ of mandamus requiring the certification. The United States Supreme Court reversed, in effect recognizing the legitimacy of the loyalty oath required by the Party. The Court recognized that "[s]uch a provision protects a party from intrusion by those with adverse political principles." Id. 450 U.S. at 221-22, 101 S.Ct. at 1019.
 
 
 27
 On the basis of the foregoing precedent, we conclude that the Republican Party in this case enjoys a constitutionally protected right of freedom of association. We conclude that the Party's constitutionally protected right encompasses its decision to exclude Duke as a candidate on the Republican Primary ballot because Duke's political beliefs are inconsistent with those of the Republican Party. None of the previous Supreme Court cases is directly in point. For example, in Wisconsin, supra, the Court recognized the legitimacy of the party rule, the effect of which was to limit participation at the voter level in the party primary or delegate selection procedure. Thus, that case did not involve party limitations at the candidate level. Nonetheless, the case provides strong support for the proposition that party procedures to guard against intrusion by those with inconsistent ideologies are legitimate. We conclude that the burden on the right to vote in the Wisconsin case--the exclusion of all voters in the Party primary election who were not members of the Democratic Party--is comparable to the burden on the right to vote in this case--the exclusion from the Republican primary of a candidate whose beliefs the Republican Party has determined are inconsistent with those of the Party. Ray v. Blair, supra, is more directly analogous to this case in that it recognizes the legitimacy of a political party's exclusion of a candidate in the party primary in order to protect itself from those with adverse political principles. Ray v. Blair involves the same burden on the right to vote as that involved in this case--exclusion of a candidate from a party primary. We acknowledge that Ray v. Blair is not directly on point because that Court was not presented with the precise argument articulated by appellants in this case. Appellants argue that the action of the Republican Party was illegitimate because his exclusion was based upon his political beliefs. The fallacy in appellants' argument is that the Supreme Court precedent expressly permits a political party to limit its membership on the basis of political beliefs. As the Supreme Court stated in Wisconsin, 450 U.S. at 122, 101 S.Ct. at 1019, the party's freedom of association "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." We conclude that the Republican Party's exclusion of Duke because of his political beliefs was an action taken pursuant to a legitimate and compelling interest; it was an appropriate exercise of the Party's freedom to associate with persons of common political beliefs.
 
 CONCLUSION
 
 28
 We conclude that appellants are unlikely to prevail on the merits because the only claims asserted on appeal are ultimately without merit. Therefore, the district court's denial of appellants' motion for a preliminary injunction is AFFIRMED.[7]
 
 KRAVITCH, Circuit Judge, dissenting:
 
 29
 This case implicates two competing First Amendment values: first, the interests of voters and would-be candidates in participating in electoral processes; second, the interests of a political party in advancing the shared political beliefs of its members. Because, in my view, the exclusion of appellant David Duke from the Georgia Republican Presidential Preference Primary ballot substantially burdens the former interests without significantly protecting the latter, I believe that Duke and the appellant voters have demonstrated a likelihood of success on the merits of their claim and have satisfied the other three prerequisites to the issuance of a preliminary injunction. Therefore, I would hold that the district court abused its discretion in denying plaintiffs' request for injunctive relief.
 
 I. Mootness
 
 30
 For the reasons stated in its opinion, I agree with the majority that this case is not moot.
 
 II. State Action
 
 31
 The majority assumes without deciding that Duke's exclusion from the Georgia Republican presidential primary ballot amounted to state action; I affirmatively believe that such state action exists here. Georgia law establishes the mechanism by which primary ballot access is determined. Bullock v. Carter, 405 U.S. 134, 140-41, 92 S.Ct. 849, 854, 31 L.Ed.2d 92 (1972). The Candidate Selection Committee that excluded Duke from the primary ballot is a creature of state law, and two-thirds of the members of that Committee--designated specifically in the Georgia statute--are elected officials of the State. See Majority Op., n. 2. Pursuant to state law, the Georgia Secretary of State submits to the Committee an initial list of presidential candidates "who are generally advocated or recognized in news media throughout the United States as aspirants for that office ...", O.C.G.A. § 21-2-193, thereby exercising a direct and substantive role in the candidate selection process itself. Finally, the state regulates primary procedures and funds the elections. Given the direct role played by the state in determining access to the primary ballot, "the State ... collaborates in the conduct of the primary, and puts its power behind the rules of the party. It adopts the primary as part of the public election machinery." Gray v. Sanders, 372 U.S. 368, 374-75, 83 S.Ct. 801, 805, 9 L.Ed.2d 821 (1963) (quoting Chapman v. King, 154 F.2d 460, 464 (5th Cir.1946)). See also Smith v. Allwright, 321 U.S. 649, 663-64, 64 S.Ct. 757, 764-65, 88 L.Ed. 987 (1944). Under the standards announced in Gray and Allwright, the Republican Party's exclusion of Duke from the Republican presidential primary ballot constitutes state action.[1]
 
 III. Level of Constitutional Scrutiny
 
 32
 Because the exclusion of Duke from the Republican presidential primary was state action, we must next determine the proper level of scrutiny to apply.[2] The majority assumes arguendo that the strict scrutiny standard applies to this case. I firmly believe that this is the appropriate level of scrutiny.
 
 
 33
 As the majority observes, the Supreme Court recently has reasserted that a court assessing the constitutionality of a state's ballot access restriction must "first examine whether [the restriction] burdens rights protected by the First and Fourteenth Amendments." Eu v. San Francisco City Democratic Cent. Com., 489 U.S. 214, 222, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989) (citations omitted). If the action burdens such rights, "it can survive constitutional scrutiny only if the state shows that it advances a compelling state interest and is narrowly tailored to serve that interest." Id. at 222, 109 S.Ct. at 1019-1020 (citations omitted). See also Norman v. Reed, --- U.S. ----, ----, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1991). Notwithstanding the Supreme Court's occasional deviations from this standard, see, e.g., Anderson v. Celebrezze, 460 U.S. 780, 789-90, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983), it remains the traditional method by which alleged state deprivations of First Amendment rights are reviewed. Storer v. Brown, 415 U.S. 724, 759-762, 94 S.Ct. 1274, 1294, 39 L.Ed.2d 714 (1974) (Brennan, J., dissenting).[3]
 
 
 34
 IV. Application of the Strict Scrutiny Standard
 
 A. Appellants' Rights
 
 35
 In applying strict scrutiny to the instant case, the threshold question is whether the appellees' exclusion of Duke from the Georgia Republican presidential primary ballot burdens rights of the appellants protected by the First and Fourteenth Amendments. The majority identifies two particular rights that appellants allege were burdened by the state's action: the right of Duke to associate with the Republican Party, and the right of the voters to vote for Duke in the Republican primary. I agree with the majority that Duke does not have a right to associate with those who do not wish to associate with him. I disagree, however, with the majority's analysis of the other rights asserted by the appellants.
 
 
 36
 The majority errs on two levels. First, it mischaracterizes the rights appellants allege were infringed by the state's action, understating the scope of the right to vote and ignoring other related First Amendment rights directly implicated in the case. Second, it overlooks the significant burdens placed by the state on the exercise of these rights.
 
 
 37
 i. The Right To Vote and Associated Rights
 
 
 38
 The majority maintains that "the specific right alleged to be infringed in this case is not the right to vote but the right to vote for a particular candidate as a Republican in the presidential primary," and that such a right is at best "attenuated." Although the "absolute right to vote" is not implicated in this case, the state's action implicates a series of equally fundamental First Amendment rights, raising questions of both free speech and equal protection.
 
 
 39
 The right to vote embraces not only a voter's access to the ballot, but also his access to alternative viewpoints and positions presented on that ballot.[4] As the Supreme Court noted in Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), "the right to vote is 'heavily burdened' if that vote may be cast only for one of two candidates in a primary election at a time when other candidates are clamoring for a place on the ballot. It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." 415 U.S. at 716, 94 S.Ct. at 1320. See also Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968); Anderson v. Celebrezze, 460 U.S. at 793-94, 103 S.Ct. at 1572-73.
 
 
 40
 The First Amendment rights of a candidate and his or her supporters to associate for the advancement of their shared beliefs are also affected by the state's restriction of access to a primary ballot:
 
 
 41
 [T]he voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. The right of a party or an individual to a place on the ballot is entitled to protection and is intertwined with the right of voters.
 
 
 42
 Lubin v. Panish, 415 U.S. at 716, 94 S.Ct. at 1320. See also Bullock v. Carter, 405 U.S. at 143, 92 S.Ct. at 855-56; Bellotti v. Connolly, 460 U.S. at 1062, 103 S.Ct. at 1513 (Stevens, J., dissenting).
 
 
 43
 Further, a candidate's individual right to seek party nomination or political office is implicated by the action of the state in this case. Although the Supreme Court has declined to recognize the right to candidacy as fundamental, see Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), the Court emphasized that state action affecting candidate ballot access rights deserves heightened scrutiny where the restriction "unfairly or unnecessarily burdens 'the availability of political opportunity.' " Clements, 457 U.S. at 964, 102 S.Ct. at 2844 (quoting Lubin v. Panish, 415 U.S. at 716, 94 S.Ct. at 1320).
 
 
 44
 Where, as here, the state determines availability of political opportunity on the basis of ideology, such heightened scrutiny is appropriate. The state action in this case not only affects First Amendment freedoms but also the right to equal protection of those freedoms. See Police Department of the City of Chicago v. Mosley, 408 U.S. 92, 96-98, 92 S.Ct. 2286, 2290-2291, 33 L.Ed.2d 212 (1972). "[Q]ualification requirements that implicitly exclude controverted political positions are ... the most suspect." L. Tribe, American Constitutional Law, § 13-19 at 1100 n. 13. Similarly, the exclusion of Duke from access to the primary ballot on the explicit basis of his political philosophy and that of his adherents implicates the most cherished constitutional freedoms. See Bullock v. Carter, 405 U.S. at 143-144, 92 S.Ct. at 856 (holding that primary ballot access restrictions possessing a "patently exclusionary character" must be "closely scrutinized").
 
 
 45
 ii. Burden on Appellants' Rights
 
 
 46
 Given the fundamental First Amendment rights affected by the state's action in this case, the next question is whether these rights are significantly burdened by the challenged state action. The majority holds that no such burden exists. I disagree.
 
 
 47
 The majority's analysis rests on the belief that because the appellant voters may support Duke as a third-party or write-in candidate in the primary election, or as a third-party, independent or write-in candidate in the November general election, they have alternate channels through which to exercise their First Amendment rights, and consequently are only incidentally burdened by the state's exclusion of Duke from the Republican primary ballot. This belief is erroneous in view of the restrictions placed on access to the primary system by Georgia law and controlling Supreme Court precedent.
 
 Georgia law provides as follows:
 
 48
 [A]s provided in this article, a presidential preference primary shall be held ... for each political party or body which has cast for its candidates for President and Vice President in the last presidential election more than 20 percent of the total vote cast for President and Vice President in the state....
 
 
 49
 O.G.C.A. § 21-2-191. In view of the realities of our two-party system, the state restricts participation in the primary system to those individuals who qualify for the Republican and Democratic primaries.
 
 
 50
 Admittedly, Duke could run as a write-in candidate for the Republican nomination. The Supreme Court, however, has recognized that the opportunity to run as a write-in candidate "is not an adequate substitute for having one's name printed on the ballot." Anderson v. Celebrezze, 460 U.S. at 799 n.26, 103 S.Ct. at 1575 n.26; accord, Lubin v. Panish, 415 U.S. at 719 n.5, 94 S.Ct. at 1321 n.5 ("[A candidate] relegated to the write-in position would be forced to rest his chances solely upon those voters who would remember his name and take the affirmative step of writing it on the ballot.").
 
 
 51
 Thus, in light of the foregoing state law restrictions on primary participation, Duke's access to the primary process is effectively foreclosed by the state's exclusion of his name from the Republican ballot.[5] It is therefore indisputable that the appellants' rights to free political association and equal political opportunity have been burdened significantly by the state's action.
 
 B. Compelling State Interest
 
 52
 Appellants have shown that the exclusion of Duke from the Republican presidential primary ballot substantially burdens rights protected by the First and Fourteenth Amendments. The next question is whether the appellants have shown that the appellees failed to sustain their burden of demonstrating a compelling state interest that justifies the exclusion.
 
 
 53
 The majority maintains that the state has a compelling interest in protecting the institutional autonomy and First Amendment associational rights of members of the Republican Party, citing in support of this proposition a line of Supreme Court cases emphasizing the associational rights of political parties.
 
 
 54
 The majority's opinion begs the question of whether the preservation of the First Amendment rights of the Republican Party in particular is a compelling state interest. I am not convinced that it is. See Eu, 489 U.S. at 228, 109 S.Ct. at 1023 ("preserving party unity is not a compelling state interest"). Nevertheless, I will assume arguendo that the state does indeed advance a compelling state interest in support of its challenged action.[6]
 
 
 55
 C. Action Narrowly Tailored To Serve the Governmental Interest
 
 
 56
 Having found a compelling state interest in support of the state's action, the majority ends its inquiry, concluding that the exclusion of Duke from the Republican presidential preference primary ballot was constitutional. As discussed supra, however, the mere identification of a state interest is insufficient to validate state action that burdens constitutional rights. Rather, the defendant must also show that the state action was narrowly tailored to serve the alleged governmental interest. Eu, supra.[7] Answering this question requires a precise inquiry into whether allowing participation in a party primary infringes the associational interests advanced by the appellees.
 
 
 57
 The majority holds that Duke's inclusion on the Georgia Republican presidential primary ballot infringes on the Republican Party's First Amendment right to determine its membership and the right to choose its standard bearer. I do not believe that Duke's inclusion on the ballot constitutes any such infringement on the Party's rights, given that the Republican Party is free to disavow Duke, to campaign aggressively against him and to urge the Party membership to reject his candidacy at the polls. See Bellotti v. Connolly, 460 U.S. at 1063, 103 S.Ct. at 1513 (Stevens, J., dissenting) ("[i]f ... candidates have only minimal support from the enrolled party members who vote in the primary, they will simply be ignored.").
 
 
 58
 Democratic Party of United States v. Wisconsin, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981), the facts of which are presented in the majority's opinion at 1532, does not support the majority's position. By tying the votes of its delegation to the Democratic National Convention to the results of its open primary, "Wisconsin required convention delegates to cast their votes for candidates who might have drawn their support from nonparty members." Bellotti v. Connolly, 460 U.S. at 1062-63, 103 S.Ct. at 1513 (Stevens, J., dissenting) (emphasis in original). The participation of non-Democratic voters in the Wisconsin primary bound the Democratic Party to honor those voters' ideological preferences: "[t]he results of the party's decisionmaking processes might ... have been distorted" by this forced association. Id. The inclusion of Duke on the Republican primary ballot, conversely, does not distort the Party's decisionmaking processes because no one is required to vote for him. Because the Party is in no way bound to honor Duke's ideological preferences by virtue of his appearance on the ballot, no association between Duke and the Party occurs in the absence of support for Duke from Party members. Id.[8]
 
 
 59
 Implicit in the appellees' argument and the majority's opinion is the notion that the mere addition of Duke's name to the Republican primary ballot amounts to a forced association with Duke or a designation of a Republican Party standard bearer. This analysis, however, is inconsistent with the Supreme Court's decision in Eu. There, the Court addressed the constitutionality of a California law that forbade the official governing bodies of political parties to endorse or campaign for particular candidates in primary elections. The Court held the statute unconstitutional, stating that the state law infringed on a party's right "to select 'a standard bearer who best represents the party's ideologies and preferences.' " Eu, 489 U.S. at 224, 109 S.Ct. at 1021 (quoting Ripon Society, Inc. v. National Republican Party, 525 F.2d 567, 601 (D.C.Cir.) (Tamm, J., concurring in result), cert. denied, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976)).
 
 
 60
 The Court's decision in Eu is instructive because it identifies party campaigning as the means by which a party asserts its First Amendment associational right to select its standard bearer. The Court identified the primary election as the "crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." Eu, 489 U.S. at 224, 109 S.Ct. at 1021 (quoting Tashjian v. Republican Party, 479 U.S. 208, 216, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986)). The Court thus recognized by implication that candidates deemed by the Party leadership to be inappropriate standard bearers should be permitted to participate, even if unsuccessfully, in the primary process itself. The Court's decision in Eu strongly suggests that the associational interests asserted by the Republican Party in this case can be fully preserved by allowing the Party to campaign against Duke in the primary election, and that the Party has a weak associational interest in preventing Duke's inclusion on the Republican ballot.
 
 
 61
 This conclusion finds support not only in principles of constitutional law, but also in the very nature of the primary system. In Eu, the Court emphasized that "[a] primary is not hostile to intraparty feuds; rather, it is an ideal forum in which to resolve them." 489 U.S. at 227, 109 S.Ct. at 1022. See also Storer v. Brown, 415 U.S. at 735, 94 S.Ct. at 1281. This court's predecessor has recognized that factionalism between contenders for political primacy should be resolved through the electoral process without undue hindrance by the state. Riddell v. National Democratic Party, 508 F.2d 770, 776, 778 (5th Cir.1975).[9] The primary system serves as a procedural vehicle to ensure such resolution. Were we to view a political party's associational rights as permitting the party's exclusion of candidates from a primary ballot, the very purpose of a primary would disappear. See Bellotti v. Connolly, 460 U.S. at 1061, 103 S.Ct. at 1512 (Stevens, J., dissenting), quoting Appellant Bellotti's Juris. Statement, pp. 14-15.[10]
 
 
 62
 The appellees contend that this case does not involve an intra-party feud because Duke is not a Republican. Duke, however, has stated that he is a Republican. Accepting the appellees' argument would permit the Party leadership to monopolize power within the Party simply by declaring that any dissident faction does not belong to the Party, regardless of the faction's statements to the contrary. Our system leaves the responsibility of determining the course and nature of the Party to the electorate. Riddell, 508 F.2d at 776, 778.[11]
 
 
 63
 Accordingly, I do not believe that the appellees have shown that the state action in this case is narrowly tailored to serve the Republican Party's associational interests because those interests can be fully preserved by allowing the Republican Party to campaign against Duke's candidacy prior to the election.[12] The Republican Party of Georgia and the state seek to exclude Duke from the primary ballot because they believe that the Party will suffer embarrassment and adverse publicity by virtue of his candidacy for the Republican nomination. No political body, however, has a constitutional right to freedom from embarrassment or adverse publicity.
 
 V. Conclusion
 
 64
 For the foregoing reasons, I conclude that the appellants demonstrated a likelihood of success on the merits. I also believe that they established (1) irreparable injury in the absence of injunctive relief; (2) that the threatened injury to plaintiffs outweighed the harm caused by the injunction to the opposing party; and (3) that the grant of the injunction would not be adverse to the public interest. Cunningham v. Adams, 808 F.2d 815, 819 (11th Cir.1987). I therefore respectfully dissent from the majority's affirmance of the district court's denial of injunctive relief.
 
 
 
 [1]
 The party's rules bind the delegates for at least two presidential nomination ballots at the national convention, unless the candidate receives less than 35% of the ballots cast at the convention
 
 
 [2]
 The Committee is composed of Georgia's Secretary of State, the Speaker of the House of Representatives, the majority leader of the Senate, the minority leaders of both the House and the Senate, and the chairpersons of both the Democratic and Republican parties. Id. The Secretary of State serves on the Committee as a nonvoting chairperson. Id
 
 
 [3]
 Appellants Andrews, Gorton, and Manget are all registered and qualified to vote in the State of Georgia, have previously voted in Republican primary elections in Georgia and wish to have the opportunity to vote for appellant Duke in Georgia's 1992 presidential preference primary if they so choose
 
 
 [4]
 Before addressing appellants' constitutional claims, we address the issue of whether the action of the Committee in excluding Duke from the ballot constitutes state action. Appellees argue that there is no state action in this case because the decision to exclude Duke from the ballot was a private, political choice made by Republican party officials. Appellees urge that the Georgia statute does not create the right permitting political parties to choose their candidates. Appellants counter that the Committee acted pursuant to a specific statutory scheme and that, therefore, the action of the Republican party members was attributable to the state. We need not resolve the state action question at this juncture, however, because we assume, arguendo, the presence of state action and proceed to address the appellants' likelihood of success on the merits of their constitutional claims
 
 
 [5]
 We emphasize, however, the claims that have not been made by appellants. Duke and the other appellants have not claimed that the Committee used improper procedures to reject him, that the Committee excluded him for any reason other than his political beliefs, or that the Committee's decision was, in any other way, arbitrary. In addition, appellants do not assert that the Republican members of the Committee lack the authority to speak for the Republican Party or that some other person or governing body has superior authority to speak for the Republican Party. Moreover, appellants failed to adduce any evidence to support a finding of a lack of authority by the Republican Committee members or to demonstrate a failure to follow the procedures set out by the Republican Party or the Georgia statutes. Finally, appellants have asserted no challenge to the statute itself. Rather, appellants' sole challenge is that the Republican members of the Committee excluded Duke from the Republican primary ballot because of his political beliefs
 
 
 [6]
 Indeed a strong argument could be made that there is no right to vote for any particular candidate in a party primary, because the party has the right to select its candidates. See infra
 
 
 [7]
 We make two brief comments in response to the dissent. First, in Section IV.A.ii., the dissent argues that the Georgia statute would not permit Duke to run in the primary as a third party candidate. We remain convinced, however, that appellants did not present that argument either in the district court or on appeal. Duke did not seek access to the primary ballot as a third party candidate, nor did appellants argue that the right to vote was burdened by any restriction upon a third party candidate's access to the primary ballot. We express no opinion either on the fact of any such restriction or the constitutionality thereof
 Second, in balancing the constitutional rights at issue in this case, the dissent argues that appellees' position "would permit the Party leadership to monopolize power within the Party simply by declaring that any dissident faction does not belong to the Party." Infra, dissent at 1539. We express no opinion as to whether or not a state could place reasonable restrictions upon the process by which a political party determines the candidates who may run in the party primary. The state may well have legitimate interests in providing a reasonable measure of access to a political party's primary ballot. We need not address that issue, because the issue has not been presented in this case. The state has not asserted such an interest, nor have appellants presented this argument. In any event, the matter of some reasonable regulation by the state is very different from the assertion by appellants of an absolute right of access to the primary ballot of a particular political party, notwithstanding the determination by the party (by means of party procedures the validity of which are not challenged) that Duke's political beliefs are inconsistent with those of the party.
 
 
 [1]
 Delgado v. Smith, 861 F.2d 1489 (11th Cir.1988), cert. denied, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989), does not compel a contrary result. In that case, this court concluded that the state's involvement in the circulation of a voter-initiated petition to amend the Florida Constitution was not state action because "the state [did] not initiate the petition, [did] not draft the language of the petition, [did] not address the merits of the proposal and [did] not participate in any way in the circulation of the petition or in the collection of signatures." Id. at 1497. In this case, the state not only directly supervises and funds the primary election process, it also determines the composition of the selection committee and conducts the initial screening of candidates to be included on the ballot, thereby playing a considerable substantive role in the designation of both candidate selectors and candidates. This action is qualitatively different from the ministerial action at issue in Delgado
 
 
 [2]
 At footnote 5 of its opinion, the majority states that "appellants have asserted no challenge to the statute itself." Although the appellants have not alleged that the candidate selection process authorized by O.G.C.A. § 21-2-193 is unconstitutional on its face, implicit in the appellants' claims is the charge that the Georgia candidate selection law is unconstitutional as applied to Duke's candidacy because state action under that statute deprived him and his supporters of their constitutional rights to equal political opportunity, political association and equal protection of the laws. Thus, the appellants' failure to challenge the facial validity of the Georgia candidate selection law has no relevance to our inquiry today, nor does that failure bar further inquiry on this issue
 
 
 [3]
 I also believe that the appellants are entitled to the relief they seek even if we were to apply the more lenient balancing test used in Anderson. See note 12, infra
 
 
 [4]
 That this case involves a primary election rather than a general election does not affect analysis of the rights asserted by appellants. The Supreme Court has acknowledged the existence of First Amendment speech and associational rights in the context of primary elections as well as general elections. See Bullock v. Carter, 405 U.S. at 142-143, 92 S.Ct. at 855-56; Kusper v. Pontikes, 414 U.S. 51, 56-57, 94 S.Ct. 303, 307-08, 38 L.Ed.2d 260 (1973). See also Bellotti v. Connolly, 460 U.S. 1057, 1062, 103 S.Ct. 1510, 1513, 75 L.Ed.2d 938 (1983) (Stevens, J., joined by Rehnquist and O'Connor, JJ., dissenting from dismissal of appeal for lack of jurisdiction)
 
 
 [5]
 The fact that Duke may run as an independent or third-party candidate in the general election does not mitigate the burdens placed on his right to run in a primary election. See note 3, supra. The appellants' rights to participation in a presidential primary are distinct from and independent of their rights to participate in the general election, and the failure of the state to place burdens on the latter rights has no relevance to the state's action burdening the former
 
 
 [6]
 It is, however, important to recognize what interests the appellees do not assert in justification of their actions. The state does not suggest that Duke's exclusion from the ballot was designed in any way to avoid voter confusion, American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), or to otherwise protect the integrity of the electoral process. Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1972). I agree that these justifications are in some contexts sufficiently compelling to justify ballot access restrictions. Here, however, appellees rest their exclusion of Duke from the primary ballot solely on the Republican Party's right to associate with and disassociate from whomever it chooses, and contended at oral argument that the party could exclude a candidate without giving any reason whatsoever
 
 
 [7]
 By failing to conduct a "narrow tailoring" analysis as part of its strict scrutiny of the state's action, the majority fails to recognize that "the state incorporation of the party's decision ... subjects the party to standards that are ordinarily inapplicable to private organizations." Tribe, American Constitutional Law, § 13-25 at 1127-28. The state's involvement in a political party's decisionmaking processes mandates strict scrutiny of those processes, even where the state professes an interest in preserving the associational rights of the party members
 
 
 [8]
 To the extent the Party argues that a Duke victory in the Georgia primary would reflect the ideological preferences of non-Republicans and therefore violate the Party's rights of association, the Party's selective exclusion of Duke from the ballot is not narrowly tailored to serve the Party's interests, in light of the fact that the ideological preferences of non-Republicans would be reflected in any candidate's victory. The State may enact some reasonable Party registration requirements to serve its associational interests; it may not deprive a particular candidate and his supporters of their constitutional rights under the pretext of preventing cross-over voting
 
 
 [9]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [10]
 The appellees' contention at oral argument that the Republican Party could without explanation exclude all candidates from the Republican primary but President Bush underscores the irreconcilability of appellees' position and the primary system
 
 
 [11]
 It also should be noted that the Georgia primary system itself appears devoted to the ideal of inclusiveness. Under Georgia law, an individual registered to vote in the presidential primary need only declare his or her party preference upon entering the polling place. The contention that a party has a significant associational right in the primary process is belied by the inclusive nature of this process in general. Indeed, such inclusivity is the hallmark of our two-party system. See Democratic Party, 450 U.S. at 131, 101 S.Ct. at 1024 (Rehnquist, J., dissenting) (American political parties not "organized around the achievement of defined ideological goals"); Rosario, 410 U.S. at 769, 93 S.Ct. at 1255 (Powell, J., dissenting) (major parties "characterized by a fluidity and overlap of philosophy and membership")
 
 
 [12]
 As noted supra, although we must use "strict scrutiny" analysis to measure the constitutionality of the state action in this case, appellants have demonstrated a likelihood of success on the merits even under the more lenient balancing test discussed in Anderson, 460 U.S. at 789-90, 103 S.Ct. at 1570. Appellees have not demonstrated that their First Amendment rights of association are significantly infringed by Duke's appearance on the Republican ballot. Given the infringement on plaintiffs' rights to equal political opportunity and political association resulting from the state's action, the balance weighs in favor of allowing Duke access to the Republican primary ballot