**Johnny SWANSON III,
et al., Plaintiffs,**

**v.**

**Jim BENNETT, etc., et al., Defendants.**

**Civil Action No. 2:02CV644–T.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 24, 2004.

See also 219 F.Supp.2d 1225.

Arlene M. Richardson, T. Allen French, Richardson & French, Hayneville, AL, David Schoen, Montgomery, AL, for Plaintiffs.

John J. Park, Jr., Charles E. Grainger, Jr., Asst. Atty. General, Alabama Secretary of State's Office, Don Seigelman, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiffs Johnny Swanson III, Joseph Grimsley, and Frank Cobb challenge two election requirements: (1) a change in the deadline for independent-candidate registration effected by a new Alabama statute; and (2) Alabama's requirement that independent candidates running for a non-Presidential office collect signatures in an amount equal to 3% of the qualified electors who voted for governor in the last general election in the political subdivision in which the candidate seeks to be placed on the ballot.[1] The named defendants include the State of Alabama, the Secretary of State, the State Attorney General, and two Alabama probate judges. The plaintiffs' challenge is based on the First and the Fourteenth Amendments to the United States Constitution as enforced through 42 U.S.C.A. § 1983. The court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1331.

Currently before the court are motions for summary judgment filed by the plaintiffs and the defendants. For the reasons that follow, summary judgment will be entered in favor of the defendants on the 3%-signature-requirement claim, and the court *sua sponte* will issue a show-cause order as to why the deadline-change claim should not be dismissed as moot.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56 of the Federal Rules of Civil Procedure, the party seeking summary judgment must first inform the court of the basis for the party's motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the

---

1. The Independent Democrats (Alabama) is also a plaintiff in this case. However, because this is Swanson's independent party, the court has considered the two as one for purposes of this opinion.

mere allegations or denials of that party's pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

On August 30, 2002, after a hearing, this court issued a preliminary injunction requiring defendants to place Grimsley's and Cobb's names on the 2002 election ballot, and the court denied Swanson's request for a preliminary injunction. *Swanson v. Bennett*, 219 F.Supp.2d 1225 (M.D.Ala. 2002). Each side now moves for summary judgment on their claims. The facts in this case are not in dispute, and have been outlined in detail in the court's opinion granting Grimsley and Cobb's application for a preliminary injunction. *Id.* Rather than repeat itself, the court will summarize the relevant facts.

Swanson, Grimsley, and Cobb are independent candidates who sought election to the positions of United States Senator, County Sheriff, and State House Representative, respectively. Alabama election law requires that independent candidates seeking access to the ballot submit a petition with the signatures of 3% of the qualified voters who voted in the last election for governor in the political subdivision which the candidate seeks to be elected.

In December 2001, the Governor of Alabama signed Act No. 2001–1131, which moved the deadline for independent-candidate registration from July 1 to June 4, 2002, for the November 2002 ballot, that is, the 2002 election cycle.[2] However, the United States Justice Department had to preclear the Act before it could become a law, and the Act was not precleared until May 28, 2002. Therefore, on May 28, the deadline for candidate registration was suddenly changed from July 1, to June 4, giving candidates only one week to learn of the new deadline and timely submit their petitions.

On May 29, the Secretary of State's office attempted to inform candidates and the public of the new law's applicability. The office issued a press release and began a mass mailing to all probate judges informing them of preclearance and of the new deadline's applicability to the 2002 election cycle. The probate judges were to inform the local candidates of the new law's applicability.

Swanson was called by the Secretary of States's office on May 28 or 29 and told that the new law had taken effect. Grimsley learned of the new deadline from a probate judge on June 4, as he was collecting signatures at the polling place. Cobb did not learn of the new deadline until June 7, when he called the Secretary of State's Office on an unrelated question and was informed that the deadline for filing his petition had passed.

On July 1, Cobb and Grimsley attempted to file their signature petitions. Both had the statutorily required number of valid signatures to gain access to the bal-

---

**2.** For the text of § 17–7–1 of the 1975 Alabama Code prior to the passage of Act No. 2001–1131, see appendix A of this court's preliminary injunction order in *Campbell v.*

*Bennett,* 212 F.Supp.2d. 1339 (M.D.Ala.2002). For the text of § 17–7–1 after passage of the Act, see appendix B of that opinion.

lot, but they were told that their petitions would not be certified absent a court order. Swanson did not attempt to file his petition, as he did not obtain enough signatures to meet the 3% threshold.

## III. DISCUSSION

### A. Deadline–Change Claim

■ The plaintiffs' first claim is that the abrupt deadline change for independent-candidate registration, which occurred on May 28 and moved the deadline from July 1 to June 4, was unconstitutional. In its preliminary-injunction order, this court found that Grimsley and Cobb had shown a substantial likelihood of success on the merits of this claim, and issued an injunction requiring the Secretary of State to certify their names for the ballot. The court explained that "this sudden [deadline] change by the State cuts to the heart of what the concept of fair notice means." *Swanson v. Bennett,* 219 F.Supp.2d 1225, 1229–30 (M.D.Ala.2002); the abrupt change also "dramatically affect[ed][the] candidate[s'] campaign and deprive[d] the candidate[s] of [the] fundamental right[ ]" of ballot access. *Id.* at 1230. In order for the court to uphold such an infringement on ballot access, the court continued, the State must provide an adequate reason for doing so; that is, the State must provide an adequate reason for applying the new deadline to the 2002 election cycle, instead of waiting until the next election cycle, or granting candidates a grace period in which to comply. During the preliminary-injunction hearing, the State did not offer any reason justifying this infringement on the candidates' fundamental rights to access the ballot.

The court further found that, because Swanson never collected enough signatures to satisfy the 3%-signature-threshold requirement and because he could not prevail on his challenge to this threshold, it need not address his challenge to the reg-istration-deadline change, for he is not entitled to have his name placed on the ballot anyway; the court therefore denied preliminary relief to him on the deadline-change claim as well.

The court, however, cannot reach at this summary-judgment stage the same conclusions it reached at the preliminary-injunction stage as to Grimsley, Cobb, and Swanson on the deadline-change claim. This claim, in its current posture, is somewhat analogous to the claim presented in *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), where the Supreme Court held that the plaintiffs' lawsuit should be dismissed because it was moot. There, the plaintiffs sued to challenge Colorado's six-month residency requirement for voting but after they brought suit Colorado changed its law so that there was only a two-month residency requirement. The Supreme Court stated that "the appellants will face disenfranchisement in Colorado in [the next election cycle] only in the unlikely event that they first move out of the State and then reestablish residence there within two months of the presidential election in that year. Or they may take up residence in some other State, and in 1972 face disqualification under that State's law." *Id.* at 49, 90 S.Ct. at 202. The Court therefore concluded that, "The case has ... lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Id.* at 48, 90 S.Ct. at 201–202.

Similarly here, the only way the same wrong could recur for Grimsley, Cobb, and Swanson would be if Alabama were to change the law regarding the registration deadline again and fail to give them notice of it again, or if they were to move to another State where the deadline was changed at the last minute. It appears from the current record that these things

are not reasonably likely to occur. Accordingly, the court will require that all parties show cause as why the plaintiffs' deadline-change claim should not be dismissed as moot.

## B. 3%–Signature–Requirement Claim.

■ The plaintiffs also challenge the constitutionality of Alabama's requirement that independent candidates collect signatures in the amount equivalent to 3% of the qualified voters who voted for governor in the political subdivision in which the candidate seeks to be placed on the ballot. Because Cobb and Grimsley obtained the required number of signatures, this claim is moot as to them. The court will therefore address this claim as to Swanson only.

Swanson claims that this requirement is an infringement on his First Amendment right of access to the ballot and also a state imposed qualification on the office of United States Senator, in violation of the qualifications clause. U.S. Const. Art. I § 3, cl. 3. Both these arguments were rejected by this court in its preliminary-injunction order, and, after reviewing Swanson's arguments in his summary-judgment motion, this court finds that, because there are no issues of disputed fact and because there is no evidence or legal arguments set forth by Swanson that would cause it to differ from its prior opinion, summary judgment is proper for the defendants on this claim.

Swanson renews his claim that the 3% requirement is unreasonable, and he repeats many of his arguments from the preliminary-injunction hearing. In its preliminary-injunction opinion, this court first found that the State did have an important interest in requiring independent candidates to show they had a "significant modicum" of support before printing their names on the ballot. *Swanson*, 219 F.Supp.2d at 1231 (internal citations omitted). The court then stated that it is "constrained to hold a 3% requirement is reasonable," as previous cases have determined, based on the "alleviating factors [that] are present in the Alabama statute mandating the 3% requirement." *Id.* at 1232. The court focused on the factors that the Supreme Court had outlined in *Jenness v. Fortson*, 403 U.S. 431, 438–39, 91 S.Ct. 1970, 1974, 29 L.Ed.2d 554 (1971), and that the Eleventh Circuit utilized in *Libertarian Party of Fla. v. Fla.*, 710 F.2d 790, 794 (1983).[3]

In a recent per curiam decision, *Cartwright v. Barnes*, 304 F.3d 1138 (11th Cir. 2002), the Eleventh Circuit again employed this analysis and upheld the district court order dismissing the claim that Georgia's ballot access law was unconstitutional. Georgia requires independent candidates for the United States House of Representatives to submit signatures equal to 5% of the total number of registered voters eligible to vote in the last election in the district they are seeking to represent. This recent Eleventh Circuit case makes clear that this court's analysis of Alabama's 3%-signature requirement's constitutionality depends on whether "suffocating restrictions" have been placed on the free circulation of nomination petitions and whether the alleviating factors are present.

---

**3.** These factors include: (1) allowing voters to sign the petition regardless of party affiliation; (2) allowing voters who already voted in the primary to sign the petition; (3) allowing voters to sign more than one petition; (4) lack of restriction on how many signatures were allowed from one area; (5) lack of restriction on how many signatures could be submitted in an effort to meet the 3% requirement; (6) allowing sufficient time to conduct the petitioning effort; (7) the ability of minor political parties to qualify for the ballot in the past; and (8) the cost required was not impermissibly burdensome. *Swanson*, 219 F.Supp.2d at 1232.

This court employed these factors in its preliminary-injunction opinion and found that "all of the factors present in *Libertarian Party* that militate against finding a signature threshold unreasonably burdensome are also present in the Alabama statute." *Swanson,* 219 F.Supp.2d at 1233. In an attempt to illustrate that these factors are not important in accessing Alabama's election law, Swanson offers the affidavit of Richard Winger, the expert who testified during the preliminary-injunction hearing. In his affidavit, Winger states that the presence or absence of the factors do not matter because "few or none [sic] other states impose" the type of restrictions the factors address. Winger then goes on to cite which States impose each kind of ballot restriction. This information is irrelevant to this court's analysis of whether Alabama's 3% requirement is constitutional. As this court stated in its earlier opinion, this court "is no more free to impose the legislative judgment of other States on a sister State than it is free to substitute its own judgment for that of the state legislature." *Id.* at 1233 (quoting *Libertarian Party of Fla. v. Fla.,* 710 F.2d 790, 794 (1983)). The fact that other States do or do not impose restrictions on collecting signatures is irrelevant to whether Alabama's 3% requirement is constitutional. Therefore, this court reiterates its earlier ruling: the State has an interest is requiring candidates to show they have public support before printing their names on the ballot; and Alabama's chosen method of enforcing this requirement is not unconstitutional, as it does not unreasonably restrict or place suffocating restrictions on a candidate's ability to gather signatures.

■ Finally, Swanson argues that requiring a candidate to meet the 3%-signature threshold is analogous to imposing a qualification on a candidate for federal office and that this violates the qualifications clause. This court summarily rejected this

argument in its preliminary-injunction order, and the Eleventh Circuit's opinion in *Cartwright v. Barnes,* 304 F.3d 1138 (11th Cir.2002), reaches the same result. Swanson attempts to distinguish *Cartwright* because in that case, the qualifications clause issue was decided on a Rule 12(b)(6) motion to dismiss and therefore, according to Swanson, not fully considered. This court fails to see how the different procedural posture in that case affected its status as a legally binding precedent. Therefore, as a matter of law, this court "conclude[s] that [Alabama's 3%] requirement is not a 'qualification,' but a permissible procedural regulation of the manner in which candidates may obtain ballot placement." *Id.* at 1144.

■ Moreover, unlike the deadline-change claim, Swanson's 3%-signature-requirement claim is not moot. There is an exception to mootness if the claim is "capable of repetition, yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 815, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969). The Alabama law requiring an independent candidate to get signatures in the number equal to 3% of the qualified electors who voted for governor in the last general election is still on the books and could be applied to Swanson if he were to try to run again in future election cycles. The Eleventh Circuit Court of Appeals found that this exception applied in a case in which a plaintiff sued to get on the ballot, even though the State claimed it was too late to get his name on the ballot in that election. The court said that the case was not moot because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose in [1992]." *Duke v. Cleland,* 954 F.2d 1526, 1529 (11th Cir.1992). Even more analogous to this case is *Moore v. Ogilvie,* where the Supreme Court addressed an

Illinois statute requiring that independent candidates for presidential elector obtain signatures on their nominating petitions from voters distributed through the State. The Court noted that, even though the 1968 election was over, Illinois showed no sign that it was going to change its system; the Court explained that "the burden ... placed on the nomination of nominees for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935." 394 U.S. at 816, 89 S.Ct. at 1494. Thus, the problem was capable of repetition yet evading review.

Because there is every reason to think that Swanson will keep trying to get on the ballot in Alabama, his 3%-signature-requirement claim is not moot.

In sum, this court finds that Swanson's 3%-signature-requirement claim is not moot and that the State of Alabama can require independent candidates to show they have significant public support before placing their names on the ballot by requiring them to obtain signatures of 3% of the qualified electors voting for governor in the last general election in the political subdivisions in which the candidates seek to be placed on the ballot. Therefore, summary judgment will be granted for the defendants on this claim.

## IV. CONCLUSION

For above reasons, the court grants summary judgment in favor defendants on the 3%-signature-requirement claim and *sua sponte* issues a show-cause order as to why the deadline-change claim should not be dismissed as moot.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, the following is the ORDER, JUDGMENT, and DECREE of the court:

(1) The motions for summary judgment, filed by the plaintiffs and the defendants on July 16, August 2 and 13, and September 9, 2002 (doc. nos. 11, 33, 47, 69), are granted in part and denied in part.

(2) Judgment is entered in favor of the defendants and against the plaintiffs on the plaintiffs' 3%-signature-requirement claim, with the plaintiffs taking nothing by this claim.

(3) The parties are to show cause, if any there be, in writing by September 7, 2004, as to why the plaintiffs' deadline-change claim should not be dismissed as moot.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.